# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| BRENT LAMBI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 4:11-CV-00906-DGK |
| | ) |
| AMERICAN FAMILY MUTUAL | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **ORDER GRANTING DEFENDANT SUMMARY JUDGMENT**

This is an insurance coverage dispute concerning what, if any, coverage is available under a homeowner's policy issued by Defendant American Family Mutual Insurance Company ("American Family") to Plaintiff Brent Lambi ("Lambi") to defend against a lawsuit filed by Brian Potter ("Potter"). Lambi was sued by third-party Potter for allegedly infecting Potter with the Human Immunodeficiency Virus ("HIV") while the two were engaged in sexual activity. After Potter sued, Lambi sought defense and indemnification under his homeowner's policy ("the Policy"). American Family denied coverage. Lambi then settled Potter's lawsuit and filed the present action against American Family for breach of contract, vexatious refusal to defend or indemnify, and bad faith refusal to defend.

Now before the Court are the parties' cross-motions for summary judgment.[1] Holding that (1) Lambi's alleged infection of Potter with HIV is not a "bodily injury" as that term is

---

[1] Specifically before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 8), Plaintiff's Suggestions in Support (Doc. 9), Defendant's Suggestions in Opposition (Doc. 10), Plaintiff's Reply (Doc. 15), Defendant's Motion for Summary Judgment (Doc. 12), Defendant's Memorandum in Support (Doc. 13), and Plaintiff's Response (Doc. 16).

defined by the Policy; and (2) Potter's claims are expressly excluded by the Policy, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

**Factual Background**

The following facts are undisputed. In the fall of 2000, Plaintiff Brent Lambi purchased homeowner's insurance policy number 24-PQ4749-01 ("the Policy") from Defendant American Family Mutual Insurance Company. This policy was in effect in September of 2008 when Lambi engaged in sexual activity with third-party Brian Potter.

On December 2, 2009, Potter filed suit against Lambi in the Circuit Court of Jackson County, Missouri alleging that Lambi infected him with HIV while the two were engaged in sexual activity. The complaint brought claims for negligence, negligent misrepresentation and/or concealment, negligent infliction of emotional distress, and battery. Lambi answered by generally denying the allegations.

Lambi notified American Family of the lawsuit on November 12, 2010 and requested American Family defend him in it. On November 19, 2010, American Family notified Lambi that it would not defend him because it denied coverage for Potter's claims. Lambi subsequently settled the Potter lawsuit by agreeing to pay Potter a confidential amount in exchange for release of all underlying claims.

On July 1, 2011, Lambi filed the instant case against American Family in Jackson County Circuit Court. Lambi's Complaint alleges breach of contract, vexatious refusal to defend or indemnify, and bad faith refusal to defend or settle. It seeks reimbursement of the settlement amount, attorneys' fees, and other damages. Defendant subsequently removed the lawsuit to federal court by invoking the Court's diversity jurisdiction.

2

The Policy contains the following terms and provisions that are relevant to the pending cross-motions for summary judgment. Under "Coverage D – Personal Liability Coverage," the Policy provides that,

> We [American Family] will pay, up to our limit, compensatory damages for which any insured is legally liable because of **bodily injury** or property damage caused by an **occurrence** covered by this policy.
>
> **Defense Provision.**
> If is a suit is brought against any insured for damages because of **bodily injury** or property damage caused by an **occurrence** to which this policy applies, we will provide a defense at our expense by counsel of our choice. We will defend any suit or settle any claim for damages payable under this policy as we think proper.

(Policy at p. 9) (bold in original, some bold omitted). It also contains the following definitions:

1. **Bodily injury** means bodily harm, sickness, or disease. It includes resulting loss of services, required care and death. Bodily injury does not include:
   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism which are transmitted by any insured to any other person;
   b. the exposure to any such communicable disease, bacteria, parasite, virus, or other organism; or
   c. emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person.

\* \* \*

9. **Occurrence** means an accident, including exposure to conditions, which results during the policy period, in:
   a. **bodily injury**; or
   b. **property damage**.

(Policy at p. 1) (bold in original). Finally, under "Coverage D – Personal Liability and Coverage E – Medical Expenses" the Policy states in relevant part that these coveragesdo not apply to:

1. **Abuse**. We will not cover **bodily injury** or **property damage** arising out of or resulting from any actual or alleged:
   a. sexual molestation or contact;
   b. corporal punishment; or
   c. physical or mental abuse of a person

3

* * *

5. **Communicable Disease**. We will not cover **bodily injury** arising out of the actual or alleged transmission of a communicable disease.

(Policy at pp. 10-11) (bold in original).

## Choice of Law

A federal court exercising its diversity jurisdiction applies the choice of law rules of the state where it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). In matters involving disputes related to insurance contracts Missouri follows § 188 of the Restatement (Second) of Conflict of Laws. *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724-25 (Mo. 2004). Pursuant to § 188, where, as here, an insurance policy fails to supply a choice of law provision "the law of the state with the most significant relationship to the transaction governs." *Id.* at 725. Missouri courts look to the following to determine which state has the most significant relationship: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location and subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Viacom*, 138 S.W.3d at 725. In the present case, the Court holds these factors weigh in favor of finding that Missouri law governs this dispute.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court

4

must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

Summary judgment is particularly appropriate where, as here, the disputed questions are legal rather than factual. *See Flath v. Garrison Public School Dist. No. 51*, 82 F.3d 244, 246 (8th Cir. 1998) (citations omitted).

### Discussion

The issue in this case is a legal one concerning the scope of the Policy's personal liability coverage. American Family contends that by its express terms the policy does not extend coverage to Lambi for the claims brought by Potter. Lambi claims that the policy language either covers these claim outright or is ambiguous, and if it is ambiguous, the policy should be construed in his favor.

The applicable Missouri law is well-settled. As the parties observe,[2] insurance coverage is a question of law. *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. 2002) (en banc). Generally speaking, a liability insurance policy binds an insurer to two potential obligations; the duty to

---

[2] This paragraph and the following two paragraphs which summarize the "boilerplate" law on this subject are drawn almost verbatim from the parties' briefs.

5

defend and the duty to indemnify. An insurer's duty to defend exists when the petition states some grounds of liability covered by its insurance policy. *Woods v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 46 (Mo. App. 1998). The duty to defend is determined by comparing the language of the insurance contract with the allegations of the petition. *Standard Artificial Limb, Inc. v. Alliance Ins. Co.*, 895 S.W.2d 205, 210 (Mo. App. 1995). If the petition alleges facts which state a claim that is potentially within the policy's coverage, a duty to defend exists. *Woods*, 980 S.W.2d at 47.

The insured bears the burden of proving that a loss and damages he incurred are covered under an insurance policy. *See Am. States Ins. Co. v. Herman C. Kempker Constr. Co., Inc.*, 71 S.W.3d 232, 235 (Mo. Ct. App. 2002). When an insurer seeks to avoid coverage by invoking a policy exclusion, it bears the burden of proving the applicability of that exclusion. *State Farm Fire & Cas. v. D.T.S.*, 867 S.W.2d 642 (Mo. Ct. App. 1993). In the present case, to prove that Potter's claim against him is covered by the Policy, Lambi must establish: (1) that he (Lambi) is an "insured" under the Policy; (2) that any liability to Potter arises out of "bodily injury" or "property damage" as defined by the Policy; (3) that the bodily injury or property damage was caused by an occurrence; and (4) that the bodily injury and occurrence are covered by the Policy, that is, they are not specifically excluded. The parties agree that Lambi is an insured, but disagree whether the latter three elements are established.

In interpreting an insurance policy, if the language is ambiguous, it will be construed against the insurer. *Peters v. Emp'r Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993) (en banc) (citation omitted). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Id.* (citation omitted). "Clear and unambiguous language, on the other hand, is to be given its plain meaning notwithstanding the fact that it

appears in restrictive provisions of the policy." *Jasper v. State Farm Mut. Auto. Ins. Co.*, 875 S.W.2d 954, 956-957 (Mo. Ct. App. 1994) (citation omitted). In construing policy language, courts apply the meaning attached by "an ordinary person of average understanding…." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc).

I. **The Policy language does not cover Potter's claims against Lambi.**

Coverage D of the Policy outlines the personal liability coverage provided by the Policy. After carefully reviewing this language and the parties' arguments, the Court holds Lambi has failed to establish that Potter's alleged exposure to HIV was a "bodily injury" covered by the Policy. The Court also holds Potter's claims are expressly excluded by the Policy. Given that these holdings are dispositive, the Court declines to consider Defendant's other arguments, such as whether exposure to HIV is a covered "occurrence" under the Policy, or the applicability of the intentional act exclusion.

    A. **Plaintiff has not shown legal liability resulting from a "bodily injury."**

        **1. HIV transmitted via sexual contact is a communicable disease which is not covered by the Policy.**

The Policy defines "bodily injury" as, "bodily harm, sickness, or disease…. Bodily injury does not include: a. any of the following which are communicable: *disease*, bacteria, parasite, virus, or other organism *which are transmitted by any insured to any other person…*" (bold in original removed, italics added). Thus, the plain language of the Policy excludes coverage for transmitting communicable diseases, such as infecting a sexual partner with HIV, but provides coverage where a diseased is caused by an accident, for example, if an insured exposed another to mesothelioma.

Plaintiff argues the Policy is ambiguous because it purports to cover liability arising from disease and then disclaims coverage for disease which is communicable. Plaintiff notes that

7

Case 4:11-cv-00906-DGK   Document 17   Filed 06/06/12   Page 7 of 11

under Missouri law, a policy is ambiguous if it "promises the insured something at one point but then takes it away at another." *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo. App. 2007). Plaintiff reasons that "disease which is communicable" and "disease caused by accident" are distinctions without a difference. Thus, since the Policy promises to cover disease caused by accident, but then takes away coverage for disease which is communicable, it is ambiguous under *Chamness*.

The Court finds no merit to this argument. There is an actual, tangible difference between diseases which are transmitted from one person to another and diseases which are caused by an accident. They are distinct subcategories of diseases. The policy covers the latter but not the former.

### 2. The Policy does not provide coverage for sexually transmitted HIV as a sickness caused by accident.

Plaintiff also argues that the Policy provides coverage for transmission of HIV as a "sickness caused by accident." Plaintiff rightly notes the Policy covers sickness as a type of "bodily injury" and an accident as a type of "occurrence," and then asserts that because the Policy excludes coverage for communicable diseases which an insured transmits to another, it is ambiguous. That is, the Policy takes something away, coverage for transmitting HIV, which it promises to insure under its "sickness" language.

Similar to the above, this argument fails because there is a difference between a "sickness caused by accident" and a communicable disease which an insured transmits to another person. Granted, a communicable disease which an insured transmits to another is a sickness, but it is a kind of sickness which the Policy excludes from coverage. While Lambi may have accidentally exposed Lambi to HIV, that does not change the fact that the plain language of the Policy does not provide coverage for a communicable disease which an insured transmits to another person.

8

### B. The Policy's abuse and communicable disease exclusions clearly apply and deny coverage.

#### 1. The abuse exclusion applies.

Even if Potter's lawsuit against Lambi was covered under the Policy's "bodily injury" language, two exclusions in the Policy operate to deny coverage. "[A]n exclusion is a policy provision which declares that certain causes of loss, or certain consequences of an insured event are not covered by the policy." *Hawkeye-Sec. Ins. Co. v. Davis*, 6 S.W.3d 419, 427 (Mo. Ct. App. 1999). "[A]n exclusion provision has no function to endow coverage but serves only to limit the obligation of indemnity undertaken by the policy." *Id.*

The Policy's exclusions are clearly set out on page 10 under the heading "Exclusions – Section II." The first exclusion, titled "Abuse," states: "We will not cover bodily injury…arising out of or resulting from any actual or alleged: a. sexual molestation or *contact*…." (emphasis added). The plain meaning of this exclusion is that Defendant will not cover bodily injury arising out of any actual or alleged sexual contact.

Plaintiff's response is that the sexual contact alleged in the underlying complaint was consensual and not "the sort of non-consensual assault, *i.e.*, abuse, for which [Defendant] obviously meant to disclaim coverage." Plaintiff's Response (Doc. 16) at p. 11. The plain meaning of the abuse exclusion, however, disclaims coverage for any bodily injury arising out of sexual contact, regardless of the nature of the contact. Because all of Potter's claims in the underlying suit against Lambi, including his claim for "medically diagnosable mental distress," arose out of sexual contact between them, the Court holds the abuse exclusion applies to exclude all coverage.

### 2. The communicable disease exclusion applies.

The Policy's communicable disease exclusion states: "We will not cover bodily injury arising out of the actual or alleged transmission of a communicable disease." Policy at pp. 10-11 (bold in original removed). Again, the plain language of the exclusion applies to deny Plaintiff coverage.

Plaintiff does not challenge the applicability of the exclusion itself, which Plaintiff admits is neither ambiguous nor unduly broad. Again relying on the language in *Chamness* that "[w]here an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity," *Chamness*, 26 S.W.3d at 204, Lambi contends the exclusion creates ambiguity in the Policy as a whole by purporting to cover liability for disease, then excluding liability for communicable disease. Plaintiff's reliance on *Chamness*, however, is misplaced here because this language applies only to "excess" or "other insurance" clauses of a policy. *See id.* (noting this holding applies when "an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided…."); *Seeck*, 212 S.W.3d at 132 (citing same language in evaluating ambiguity of an excess or other insurance clause). If *Chamness* had the broad application Plaintiff repeatedly claims, it would, as Defendant observes, "essentially render each and every exclusion within any policy of insurance meaningless." Def. Sugg. In Opp'n (Doc. 10) at p. 14.

Although this exclusion is arguably redundant because the definition of "bodily injury" already excludes communicable disease transmitted by an insured to any other person, that does not mean the Policy is ambiguous. "[R]edundancy is not the same as ambiguity." *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 541 (Mo. Ct. App. 2010) (citing *Purdy v. Farmers Inc. Co. of Idaho*, 65 P.3d 184, 188 (Idaho 2003) ("Although redundancy may be considered when

interpreting an ambiguous provision in an insurance policy, redundancy does not by itself make an insurance policy ambiguous.")). Given that the Policy's communicable disease exclusion is ambiguous, the Court holds the exclusion applies and denies Plaintiff coverage in this case.

## Conclusion

Because Plaintiff has not established coverage existed under the Policy, and because Defendant has established the applicability of two exclusions specifically denying coverage to Plaintiff, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: June 6, 2012                           /s/ Greg Kays
                                             GREG KAYS, JUDGE
                                             UNITED STATES DISTRICT COURT